## GENERAL ELECTRIC CO. v. GARRETT COAL CO.

### (Circuit Court, W. D. Pennsylvania. October 23, 1905.)

### No. 31.

PATENTS—INFRINGEMENT—TROLLEY STAND.

> The Bentley patent, No. 488,179, for a trolley stand for electric cars,. construed, and *held* not infringed by a device which did not contain a spring plunger sliding in the drum to support the trolley pole, which is· made an essential element of the combination of each claim, nor any· mechanical equivalent thereof.

In Equity.   On final hearing.

Betts, Betts, Sheffield & Betts, for complainant.
E. E. Robbins and Glenn S. Noble, for respondent.

BUFFINGTON, District Judge.   This is a bill in equity brought by· the General Electric Company against the Garrett Coal Company, users· of a mining electric locomotive made by the Morgan-Gardner Electric Company.   The bill alleges infringement of the first claim of a patent No. 488,179, owned by complainant, which was granted to Edward M.. Bentley for a trolley stand for electric cars.   The defenses are invalidity of the patent and noninfringement.   We will for present purposes· assume .the validity of the patent, and confine ourselves to the question· of infringement.   The patent relates to trolleys for electric cars, which· the patentee explained frequently jumped off their overhead conductors· when passing around curves or over switches; that this was due to· the fact the trolley moved stiffly in its bearings, and could not accommodate itself to the movements of the car.   His device consisted ·of a· hollow pedestal secured to the roof of the car.   Loosely fitting therein was a cylindrical rotatable drum, the upper end of which extended' above the cylinder, and was provided at one side with a pair of legs, between which was hinged the trolley pole socket.   From this socket a lateral arm projected to the ·center of the drum, where it had a bearing on a plunger fitted to slide smoothly in the drum, and compress a· strong spring seated on the drum bottom.   The specification then proceeds :

> "The operation is obvious.   The spring keeps the trolley wheel normally· pressed up against the overhead conductor, but permits the pole to sway up and down, as may be necessary.   The drum turns easily on its bearings· in the cylinder, and thus provides for the lateral movement of the pole in· rounding curves and the like."

Upon this device was granted, inter alia, the claim now in dispute,. viz. :

> "A trolley stand comprising an upright cylinder, a drum rotatable therein, and adapted to carry a pivoted trolley pole, and a spring plunger sliding in· the drum to support said pole, substantially as described."

The alleged infringing apparatus also uses an upright base or cylinder,. in which is sleeved a rotatable drum, which supports the trolley pole, which is pivoted thereon.   The lower end of the pole extends beyond' the supporting pivot to the center of the drum.   From this end a strong

tension spring extends to the bottom of the drum, where it is secured by a nut. It will thus be seen the respondent's combination does not embody the element of "a spring plunger sliding in the drum to support said trolley." The importance of this element of a spring plunger is shown by the fact that it is found in every claim of the patent and is described in the specification. No definition of it is found in the dictionaries, and it would seem the term is an original one, used by the patentee to describe that element of his combination. Now in that combination the spring plunger has functions peculiar to itself. In the first place, it serves, as stated in the claim, "to support said pole"; that is, the lateral arm is supported by the plunger, buoyed up from below by the compressed spring. Indeed the word "support" implies sustaining from beneath, as is indicated by its definition, "to bear by being under," and its derivation, subportare. It has also the function of "sliding in the drum" for the purpose, or, as stated in the specification, where it is described, as "fitted to slide smoothly in the drum." This, it will be observed, enables it to compress the spring without the latter buckling. Now in respondent's device no plunger, or anything at all resembling one, is employed, or, indeed, anything that can be regarded as a mechanical equivalent thereof. It is true a spring is used, but the use of springs to maintain contact between a trolley pole and an overhead wire was known before this patent. In that device, too, the pole is supported by the pivot on the drum, and, while the tension of the spring pulls the trolley pole against the wire, it serves in no way to support it in the sense of carrying its weight. In the patentee's device the spring does support the trolley. This it does by compression and the plunger; that is, the "spring plunger sliding in the drum" is the indispensable co-operating aid required to support or carry the weight of the pole. In the respondent's device the expansion of the spring pulls the trolley end up, and in doing so the drum or surrounding sleeve in no way co-operates with the spring, or modifies its action. It will be noted the spring of the Bentley device cannot be extended above the top of the drum, while the respondent's can and does.

We are accordingly of opinion the element of a spring plunger is not found in the respondent's device, or can its tension spring be adjudged the mechanical equivalent of Bentley's spring plunger sliding in the drum to support the trolley pole. Such being the case, the absence of this element in respondent's combination relieves it of the charge of infringement. Cimiotti Co. v. American Co., 198 U. S. 409, 25 Sup. Ct. 697, 49 L. Ed. 1100.